UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TYRONE EUGENE ROACH #923081,

    Plaintiff,

v.

UNKNOWN HAATAJA, et al.,

    Defendants.
_____/

Case No. 2:18-cv-00207

Hon. Janet T. Neff
U.S. District Judge

# REPORT AND RECOMMENDATION

## I. Introduction

This is a civil rights action brought by state prisoner Tyrone Eugene Roach pursuant to 42 U.S.C. § 1983 for acts which occurred while he was confined at the Baraga Correctional Facility (AMF). Roach alleges that Defendants harassed and retaliated against him after he filed grievances. Between June 2, 2018, and June 6, 2018, Roach asked to use the telephone to call his family. When his request was refused, he threatened to file a grievance. Roach then received a misconduct ticket for threatening behavior. Roach says that this started a series of harassing and retaliatory acts.

The three Defendants in this case – Corrections Officers Haataja, Sullivan and Johnson – filed a motion for summary judgment on June 17, 2019. (ECF No. 26.) Defendants assert that Roach failed to exhaust his administrative remedies. Roach filed a response on July 17, 2019. (ECF No. 28.) After filing his response, he filed

two supplemental responses, the first on July 22, 2019, and the second on August 1, 2019. (ECF No. 32, 33.)

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant Defendants' motion for summary judgment and dismiss this case.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on

a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is

3

required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 525.  Second, "the internal review might 'filter out some frivolous claims.'" *Id*. (quoting *Booth*, 532 U.S. at 737*)*.  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*.  When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to resolve a problem orally within two business days of

4

becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and

Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust

administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[1], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94. If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on

---

[1] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

### IV. Plaintiff's Allegations

Liberally construing Roach's complaint, Roach asserts seven instances of retaliatory acts.[3] Roach's allegations are summarized in the table below.

| Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|
| Issued a false misconduct ticket for threatening behavior | Sullivan | Around: 6/2/18-6/6/18 |
| Shake down of cell | Sullivan | Around: 6/15/18-August |
| Threatened to issue another misconduct ticket for filing a grievance | Sullivan | 9-24-18 |
| Harassed about being a bad Muslim | Haataja | June-August |
| Threatened to tear up cell and continue to disrespect Roach's religious beliefs | Haataja | 10-29-18 |
| Stated over P.A. system "Roach you know you ain't the man up here so stop asking 'little bitch, stupid Muslim.'" | Haataja | 11-8-18 |
| Issued a false misconduct ticket and placed on food loaf and given an upper slot restriction | Johnson | 11-9-18 |

---

[3] Roach attached to his response brief a Step I grievance form **AMF 2018-07-1685-17D,** addressing a 6-6-18 incident regarding the denial of telephone usage. (ECF No. 28-1, PageID.120.) Roach attached another Step I grievance form with the same identifying number **AMF-18-07-1685-17D,** with an incident date of 7-9-18 claiming that Haataja refused to allow him to go to the yard, stating there are only "bad Muslims." (*Id.*, PageID.122.)

9

## V. Grievances Identified by Defendants

In their motion for summary judgment, Defendants identify two relevant grievances that Roach filed with MDOC. They claim that a review of these grievances will demonstrate that Roach has failed to exhaust his administrative remedies by properly completing the grievance process before filing this lawsuit. These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| AMF-18-11-2739-17D<br><br>ECF No. 26-3, PageID.98-104.<br><br>*This grievance is also identified by Roach at ECF No. 28-1, PageID.136-142 and included in table of grievances identified by Roach below.* | Haatala, VanAcker, Johnson, and Clisch | Hattala stated over P.A. system "You know you Ain't got no mail up so stop asking little bitch, stupid Muslim." | 11/8/18 | Denied on **12-22-18** | Denied on **1-11-19** | Denied on **2-21-19** |
| AMF-18-12-2836-27A<br><br>ECF No. 26-3, PageID.105-108 | Lt. M. Wealton and Poyhonen | Denied hearing in violation of due process | **11-20-18** | Rejected because involves misconduct hearing and concerns should be addressed at hearing or through an appeal of hearing process | Rejected | Rejected |

10

## VI. Grievances Identified by Roach

In response, Roach identifies additional potentially relevant grievances he filed with MDOC with incident dates on or prior to November 9, 2018 (the latest date alleged in Roach's complaint). These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| AMF-18-07-1685-17D ECF No. 28-1, PageID.122-123 | Haataja | Denied yard privileges and threatened in retaliation | 7-9-2018 | Denied | No record of Step II appeal | No record of Step III appeal |
| AMF-18-09-2346-17B ECF No. 28-1, PageID.124-127 | Sullivan | Threatened to file a misconduct | 9-24-18 | Denied | Rejected but on the merits and not on procedural grounds on 11-13-18 | Unknown. Roach says he requested that the grievance be sent to Internal Affairs after returned **on 11-15-18** (PageID.127.) |
| AMF-18-11-2630-28I ECF No. 28-1, PageID.129-131 | Haataja | Harassed and conducted a cell shake-down | 10-29-18 | Rejected | Step II appeal filed on 11-29-18. Rejected on **12-6-18** | Unknown: requested that the grievance be sent to Internal Affairs after returned on 12-7-18 |
| AMF-18-11-2688-17A ECF No. 28-1, PageID.132-135 | Haataja | Verbal abuse and cell search | 10-30-18 | Denied on **11-18-18** | Step II appeal filed on 11-27-18. Rejected but on the merits and not on procedural grounds on **12-11-18** | Unknown: requested that the grievance be sent to Internal Investigations after returned on 12-11-18 |
| AMF-18-11-2739-17D | See table with | | | | | |

11

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| ECF No. 28-1, PageID.136-142 | grievances identified by Defendants above | | | | | |
| AMF-18-11-2731-28C  ECF No. 28-1, PageID.143-146 | Johnson | Would not open slot because tray was not in Roach's hand. Issued DD ticket, requests investigation and $10,000 in damages | 11-09-18 | Rejected | Rejected on **12-4-18** | Unknown: requested that the grievance be sent to Internal Affairs after returned on **12-5-18** |

## VII. Misconduct Appeals Identified by Roach

Roach identified two Misconduct Reports that he says are relevant. These reports are summarized below.

| Ticket author | Date of Misconduct Report | Date of Misconduct Hearing | Misconduct Hearing Results | Misconduct Appeal Results |
|---|---|---|---|---|
| Sullivan  ECF No. 28-5, PageID.203-204 | 7-6-18 | 7-19-18 | Guilty of threatening behavior misconduct. Raised issue that he had threatened to write a grievance. | Unknown whether appeal was filed and if so the reason for appeal |
| Johnson  ECF No. 28-6, PageID.210-212 | 11-9-18 | **11-20-18** | Guilty of disobeying a direct order. Roach refused to attend hearing. | Disproved on **12-7-18**: claims a denial of due process for not being allowed to |

12

| Ticket author | Date of Misconduct Report | Date of Misconduct Hearing | Misconduct Hearing Results | Misconduct Appeal Results |
|---|---|---|---|---|
| | | | | attend hearing[4] |

### VIII. Analysis

Defendants argue that Roach failed to properly exhaust his claims prior to filing his federal civil rights complaint. A prisoner must properly exhaust his administrative remedies prior to filing his federal civil rights complaint. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Roach dated his complaint November 16, 2018. (ECF No. 1, PageID.4.)[5] Defendants attached to their motion the MDOC Prisoner Step III Grievance Report, which shows that Roach did not complete the grievance process for any grievance that he pursued through Step III until after his complaint was filed. And, in fact, one of the two grievances listed on the report was filed at Step I after Roach filed his complaint in federal court. The Step III Grievance Report is shown below.

---

[4]  At ECF No. 28-6, PageID.213, Roach attached a one-page exhibit dated 11-10-18 asserting that this was a "fake ticket" for filing complaints against officers Haatala and Sullivan. Even if this page was part of the misconduct appeal, the appeal was not completed until 12-7-18, which is after Roach filed this complaint. Roach also provided a copy of a different misconduct ticket that occurred after he filed his complaint purportedly to show a conflict of interest by Defendants. (ECF No. 28-7, PageID.215)

[5]  Roach's complaint is considered filed on the date he hands it to prison officials for filing under the mailbox rule. Roach's complaint was postmarked on November 18, 2018.

## MDOC Prisoner Step III Grievance Report
### 1/1/2013 to Present

**Prisoner #:** 923081  **Last Name:** Roach  **First Name:** Tyrone

| Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/7/2019 | AMF-19-01-0034-17G | 17G | 2 | 1/3/2019 | ☐ | ☐ | ☑ | ☐ | ☑ | 3/18/2019 |
| 1/18/2019 | AMF-18-11-2739-17D | 17D | 2 | 11/15/2018 | ☐ | ☐ | ☑ | ☐ | ☑ | 2/21/2019 |
| 1/8/2019 | AMF-18-12-2836-27A | 27A | 2 | 12/3/2018 | ☐ | ☐ | ☐ | ☑ | ☑ | 1/23/2019 |

Notes:

(ECF No. 26-3, PageID.97.)

This report summarizes the results of grievance pursued through Step III. Roach asks the Court to consider several other grievances he filed regarding claims in this case. The chart above (section VI) shows that those grievances were either rejected and not considered properly exhausted, or were not pursued through Step III. Thus, Roach's additional grievances raised issues that were not properly exhausted.

In addition, the grievances to which Roach cites in ECF 28-1 were processed at Steps I, II or III *after he filed his federal complaint*. Again, Roach signed his complaint on November 16 and the postmark indicates it was mailed on November 18. (ECF No. 1, PageID.4, 5.) The grievances to which Roach cites were processed after the date of the commencement of this federal lawsuit.[6] Thus, even if Roach had

---

[6] Critical dates for receipt and processing of these grievances are included in the chart in Section VI.

pursued these grievance through Step III, he cannot rely on these grievances to show exhaustion because did not complete the grievance process until *after he filed his federal complaint*. For these reasons, it is recommended that the Court find that Roach failed to properly exhaust his grievances on each claim asserted in his complaint.

Defendants failed to present the relevant misconduct hearing reports. Roach, however, provided the reports in his response brief. (ECF No. 28-5, PageID.203-204, ECF No. 28-6, PageID.210-212.) In order to properly exhaust his administrative remedies, Roach had to raise the false misconduct retaliation claim during his misconduct hearing and appeal the guilty finding. *Siggers*, 652 F.3d at 693-94. Roach raised the issue that he was given a false retaliatory misconduct ticket by Defendant Sullivan for threatening behavior during his July 19, 2018, misconduct hearing, but Roach did not appeal the guilty finding. In the opinion of the undersigned, Roach failed to properly exhaust his administrative remedies on this claim.

As to the misconduct ticket for disobeying a direct order, Roach was found guilty after it was determined that he refused to attend the November 20, 2018, hearing. The hearing occurred after Roach had authored this civil rights complaint and after he had already sent the complaint to the Court. Roach's misconduct appeal was filed after he filed his complaint. In the opinion of the undersigned, Roach failed to properly exhaust his administrative remedies prior to filing his federal complaint.

Citing *Ross v. Blake*, 136 S.Ct. 1850 (2016), Roach asserts that the grievance process was not available to him because AMF officials either had a policy of

interfering with the grievance process or because they interfered with his mail. (*See* ECF No. 28, PageID.113, 116-17.)  The records before the Court indicate that Roach regularly utilized the grievance process and, on occasion, carried the process through to completion at Step III.  The problem in this case is that Roach filed his federal lawsuit before he completed the grievance process with respect to many of his complaints.  As noted in *Porter v. Nussle*, one of the purposes for the exhaustion requirement is to afford corrections officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525.  Roach simply did not allow the grievance process to run to its completion.

## IX. Recommendation

The undersigned respectfully recommends that this Court grant Defendants' motion for summary judgment (ECF No. 26) and dismiss without prejudice Roach's complaint due to his failure to properly exhaust his administrative grievance remedies.

Dated:  February 6, 2020                    /s/ *Maarten Vermaat*
                                             MAARTEN VERMAAT
                                             U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).